UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NIA DAWSON,

               Plaintiff,

       v.                                  **MEMORANDUM AND ORDER**
                                              22-CV-5108 (RPK) (AYS)

SAG HARBOR LAUNDERETTE, INC.;
SAG HARBOR LAUNDERETTE; and
WILLIAM A. TABERT, *individually and in his official capacity as owner, agent and/or employee of the SAG HARBOR LAUNDERETTE, INC., and/or SAG HARBOR LAUNDERETTE,*

               Defendants.

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    Plaintiff Nia Dawson brings this action against Sag Harbor Launderette, Inc., Sag Harbor Launderette, and William Tabert, the launderette's owner, asserting federal claims of racial discrimination and various state-law claims. Defendants move for summary judgment. That motion is granted as to plaintiff's claims under federal law, and the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims.

## BACKGROUND

    The following facts are taken from the parties' Local Civil Rule 56.1 statements and relevant portions of the record. They are undisputed unless otherwise noted.

    In August 2021, plaintiff, an African-American woman, went with her brother to Sag Harbor Launderette, a place she had visited multiple times as a child. Def.'s Rule 56.1 Stmt. ¶¶ 5, 9, 13 (Dkt. #44-3); Pl.'s Rule 56.1 Resp. ¶¶ 5, 9, 13 (Dkt. #45-1). After placing her clothes in the

1

washer, plaintiff went with her brother to a nearby ice cream shop. Pl.'s Rule 56.1 Resp. ¶¶ 14–15; Dawson Dep. 59:12–59:23 (Dkt. #44-7). The two then returned to the outside of the launderette, sat down on a bench, and removed the face masks they had been wearing to eat their ice cream. Pl.'s Rule 56.1 Resp. ¶¶ 16–18. Tabert, the owner of the launderette, approached plaintiff and her brother and asked if he could sit next to them on the bench. *Id.* ¶¶ 6, 19. Plaintiff replied, "Unfortunately, we are social distancing." *Id.* ¶ 19. According to plaintiff, Tabert began "shouting a bunch" about how "this is [his] store" yet he "can't sit on [his] bench," and then he went back into the launderette. *Id.* ¶¶ 21, 28.

Plaintiff "fear[ed] for [her] safety" and felt "confused" about "how someone [could] become so angry at social distancing." Dawson Dep. 68:7–69:20. When plaintiff attempted to re-enter the launderette, Tabert stood near the entrance and asked if she had clothes inside. *See* Pl.'s Rule 56.1 Resp. ¶¶ 31, 35. Plaintiff replied that she did. *Ibid.* Tabert then instructed plaintiff to "use the rear entrance of the launderette to follow social distancing." *See* Pl.'s Rule 56.1 Stmt. ¶ 2 (Dkt. #42); Def.'s Mem. of L. in Supp. of Summ. J. 1 (Dkt. #44-2); Pl.'s Mem. of L. in Opp. to Def.'s Motion for Summ. J. ("Pl.'s Opp'n") 2–3 (Dkt. #45). It was "not standard for [Tabert] to instruct customers to enter through specific entrances," and he "never had told any Black customer to do so before." Pl.'s Rule 56.1 Resp. at 21; *id.* ¶ 44.

Plaintiff attempted to bypass Tabert. "As Ms. Dawson tried to move past Mr. Tabert, their bodies came into contact." *Id.* ¶ 35. Plaintiff states that Tabert "essentially body checked" her, Dawson Dep. 74:15, while Tabert claims that plaintiff pushed him, Tabert Dep. 46:15–48:10 (Dkt. #44-8). Plaintiff then called the police from inside the launderette, and when Tabert saw plaintiff on the phone, he said, "You're full of it, girl." Pl.'s Rule 56.1 Resp. ¶ 41. Police arrived at the scene and arrested Tabert on charges of harassment. *See id.* ¶¶ 47, 50. The Sag Harbor Justice

2

Court ultimately dismissed the charges. *Id.* ¶ 57; *see generally People v. Tabert*, No. 21-80036 (Sag Harbor, N.Y. Justice Ct. Sept. 13, 2022) ("Trial Mins.") (Dkt. #44-10).

Plaintiff filed this action in 2022. The operative complaint asserts claims for race discrimination under 42 U.S.C. §§ 1981 and 2000a against all defendants. *See* Second Am. Compl. ("SAC") ¶¶ 45–61 (Dkt. #7). Plaintiff also brings claims under state law for battery, intentional infliction of emotional distress, and violations of various state and local civil rights laws. *See id.* ¶¶ 62–95. Finally, plaintiff asserts claims of negligence and negligent hiring, supervision, and retention against Sag Harbor Launderette. *See id.* ¶¶ 96–118.

Defendants move for summary judgment on all claims. *See* Mot. for Summ. J. (Dkt. #44-2); Pl.'s Opp'n (Dkt. #45).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the nonmovant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In assessing the record, the Court considers cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers." Fed. R. Civ. P. 56(c)(1)(A). The Court views "the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (alterations adopted and quotation omitted).

## DISCUSSION

Defendants are entitled to summary judgment on plaintiff's federal claims for racial discrimination in violation of Sections 1981 and 2000a. The Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims, which arise under state law.

### I.  Federal Claims

Defendants are entitled to summary judgment on plaintiff's claims for racial discrimination under Section 1981 and Section 2000a.

Claims under Section 1981 and Section 2000a are analyzed under the same standard. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 106 (2d Cir. 2001). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . .as is enjoyed by white citizens," and defines "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)–(b). Section 2000a guarantees "the full and equal enjoyment of . . . any place of public accommodation . . . without discrimination or segregation on the ground of race." *Id.* § 2000a(a). To establish a violation of either, the plaintiff must provide sufficient evidence "to show that the denial of services occurred

4

under circumstances giving rise to an inference of discrimination." *Lizardo*, 270 F.3d at 101, 105; *see id.* at 106 (applying this framework to both statutes).

Several types of evidence can support such an inference, but "a jury cannot infer discrimination from thin air." *Id.* at 104. Discriminatory intent may be shown through "direct evidence," like comments or statements exhibiting animus. *See ibid.* Alternatively, a plaintiff may point to "sufficient circumstantial evidence," such as evidence "that similarly situated patrons were given preferential treatment." *Id.* at 101, 104. Evidence that a plaintiff was treated with "hostility" may sometimes support an inference of discriminatory intent, but only when the "context" suggests discrimination, as opposed to "yet another example of the decline of civility." *Id*. at 102.

Here, the record taken in the light most favorable to plaintiff does not contain evidence of discriminatory intent. Defendant Tabert's statements to plaintiff—rather than providing direct evidence of racial animus—expressed anger at plaintiff's approach to social distancing. *See* Dawson Dep. 69:4–11, 72:21–73:13, 88:14–20, 89:11–90:2; Tabert Dep. 48:6–10; Pl.'s Rule 56.1 Resp. ¶¶ 20–21. Plaintiff suggests animus could be inferred because Tabert did not direct "similarly situated white customers" to the back entrance, Pl.'s Opp'n 7—relying on Tabert's admission that it is "not standard for him to instruct customers to enter through specific entrances," Pl.'s Rule 56.1 Resp. 21; *see* Pl.'s Opp'n 7. But plaintiff does not point to white customers who were similarly situated. To be similarly situated, there must be "a reasonably close resemblance of facts and circumstances" such that the comparator is "similar in significant respects." *Lizardo*, 270 F.3d at 101. While Tabert directed plaintiff not to enter through the front door after a spat about social distancing, plaintiff has not offered any evidence that any white customers "engaged in comparable conduct" to the refusal to allow Tabert to sit next to plaintiff that immediately

5

preceded Tabert's behavior. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *see Lizardo*, 270 F.3d at 101.

Moreover, Tabert's statement about his usual behavior—the statement on which plaintiff relies—suggests that his treatment of plaintiff after the social-distancing spat departed from his usual treatment of both white and non-white customers. After all, there is no dispute that the launderette's clientele—the people whom Tarbert did not typically direct to particular entrances—included not only "white customers," Pl.'s Opp'n 7, but also other African-American customers, *see* Pl.'s Rule 56.1 Resp. ¶ 44, whom Tabert had never previously directed to a separate entrance, *ibid*. This context suggests that the distinguishing feature of the interaction between Tabert and plaintiff was the social distancing disagreement, not race. *See Lizardo*, 270 F.3d at 104 (granting summary judgment to restaurant on race discrimination claims by African-American and Asian-American plaintiffs denied service at a restaurant after noting as relevant context that "minorities of both the African and Asian American races were seated and served in the restaurant that evening"). In any event, plaintiff has failed to adduce any evidence that Tabert or the launderette treated her differently from similarly situated customers.

Plaintiff next focuses on Tabert's underlying hostile act—the direction that plaintiff should "enter through the back entrance." Pl.'s Opp'n 8. But whether even "markedly hostile treatment" suggests racial animus depends on context. *See Lizardo*, 270 F.3d at 102; *ibid.* ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it."). Again, the parties agree that Tabert's challenged actions occurred shortly after he became agitated when plaintiff declined to share a bench with him due to social distancing, *see* pages 1–2, *supra*—circumstances that do "little to support an inference of discriminatory intent." *Lizardo*, 270 F.3d at 102. Indeed,

6

given the context, not even plaintiff interpreted his direction that she use a back entrance as being connected to her race. *See* Dawson Dep. 78:19–79:3 (stating that "no racist remarks were made immediately" prior to when plaintiff "called the police" or anytime after); Trial Mins. 77 (plaintiff's testimony in Sag Harbor Justice Court that she interpreted Tabert's conduct as him being "[a]ngry" that she and her brother "were practicing social distancing" and "nothing more").

While it is fair of plaintiff to cite the Jim-Crow-era practice of compelling black customers to "enter[] and exit[] through back entrances of establishments" as part of the context, too, Pl.'s Opp'n 7, *Lizardo* indicates that the history of Jim Crow, standing alone, would not be an adequate basis for a jury to find that *Tabert's* actions were motivated by racial animus. After all, in the Jim-Crow era, it was also common for some establishments to deny service to non-white customers, but the Second Circuit concluded in *Lizardo* that non-white plaintiffs could not establish an inference of racial animus sufficient to withstand summary judgment simply by pointing to a restaurant's denial of service. *See Lizardo*, 270 F.3d at 101–05; *see also, e.g.*, *Grant v. County of Suffolk*, No. 15-CV-4781 (DRH) (AYS), 2020 WL 2747984, at *3 (E.D.N.Y. May 27, 2020) (applying *Lizardo* in granting summary judgment to diner in case in which diner refused to serve plaintiff following dispute over plaintiff's insistence on sitting at a different booth).

Simply put, plaintiff has "not pointed to evidence sufficient to establish that [she] w[as] denied services under circumstances giving rise to an inference of race discrimination." *Lizardo*, 270 F.3d at 104. Accordingly, defendants are entitled to summary judgment on plaintiff's claims under Sections 1981 and 2000a.

## II. State Claims

Having dismissed plaintiff's federal-law claims, the Court declines to exercise supplemental jurisdiction over her state-law claims. A "district court may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original

7

jurisdiction." 28 U.S.C. § 1367(c)(3). Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). As a general matter, where "all federal claims are dismissed before trial, the state claims should be dismissed as well." *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 481 (2d Cir. 2021) (citation omitted). Plaintiff did not address supplemental jurisdiction in her briefing, let alone provide a persuasive reason to depart from the usual practice of declining to exercise supplemental jurisdiction once federal-law claims are dismissed. Accordingly, plaintiff's state-law claims are dismissed without prejudice. *See, e.g.*, *Downey v. Adloox Inc.*, No. 16-CV-1689 (JMF), 2018 WL 5266875, at *9 & n.9 (S.D.N.Y. Oct. 23, 2018), *aff'd*, 789 F. App'x 903 (2d Cir. 2019).

## CONCLUSION

Defendants' motion for summary judgment is granted as to plaintiff's claims under 42 U.S.C. §§ 1981 and 2000a. The Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims, and those claims are dismissed without prejudice to plaintiff pursuing them in state court.

SO ORDERED.

                                              /s/ Rachel Kovner
                                              RACHEL P. KOVNER
                                              United States District Judge

Dated: September 4, 2025
       Brooklyn, New York